# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

BRIAN BRANDWEIN                                              Case No.:

       *Plaintiff,*                                        Judge:

          v.

THE BOARD OF TRUSTEES of the

UNIVERSITY OF SOUTH FLORIDA d/b/a

UNIVERSITY OF SOUTH FLORIDA,

CHRISTINE NATAL-MARTINEZ

individually and in official capacity,

JONATHAN MONTE

individually and in official capacity,

MITCHELL JASKELA

individually and in official capacity,

DANIELLE MCDONALD

individually and in official capacity,

MELISSA GRAHAM

individually and in official capacity.

       *Defendants,*

_____/


## **COMPLAINT**

COMES NOW, the Plaintiff, Brian Brandwein ("Mr. Brandwein" or "Plaintiff"), Pro Se in this matter, hereby files this complaint against the Defendants, The Board of Trustees of the University of South Florida ("University of South Florida", "USF", "University" or "School"), Christine Natal-Martinez ("Christine Natal-Martinez" or "Ms. Natal-Martinez"), Jonathan Monte

("Jonathan Monte" or "Mr. Monte"), Mitchell Jaskela ("Mitchell Jaskela" or "Mr. Jaskela"), Danielle McDonald ("Dean Danielle McDonald" or "Ms. McDonald"), and Melissa Graham ("Melissa Graham" or "Ms. Graham") and alleges as follows:

## **INTRODUCTION**

In August of 2019, the Plaintiff enrolled at the University of South Florida as an undergraduate student pursuing a bachelor's degree. At that time, Mr. Brandwein and USF entered into 2 contracts. The first was the student handbook that outlined Mr. Brandwein's obligations to USF and outlined the USF's obligations to Mr. Brandwein. This unilateral contract was accepted by the University when they drafted and sent it to Mr. Brandwein and was accepted by Mr. Brandwein when he signed his enrollment papers and began his academic career. The second contract was the Housing and Dining Contract that Mr. Brandwein and the University agreed to when Mr. Brandwein signed up to live in Castor Hall, a university dormitory. On October 10, 2019, another student named Rebecca Petersen accused the Plaintiff of injuring her. Mr. Brandwein was removed from student housing temporarily pending an investigation by the University. The alleged incident occurred in a dormitory hallway equipped with security cameras that captured everything. At that time, they ordered Mr. Brandwein to leave his dorm. They gave him 10 minutes to pack whatever he needed and was left to sleep in the street. Mr. Brandwein met with Christine Natal-Martinez, the initial review officer assigned to this case. On October 18, 2019, Mr. Brandwein received an initial charge letter from the USF stating that Mr. Brandwein was charged with injurious behavior and disruptive conduct. USF then ordered Mr. Brandwein to permanently vacate his dorm room at Castor Hall by October 29, 2019 at noon which he did.

Mr. Brandwein did not have anywhere to live. From Sunday to Thursday Mr. Brandwein would either sleep in the University's 24-hour library, his car, or Holly Garage, a parking garage near the library. When Mr. Brandwein slept in his car, a 2010 Hyundai Sonata, he had to share the car with his possessions and there was not much room. After classes ended on Fridays, Mr. Brandwein would travel to UCF in Orlando where his brother, Joel, attended school. Mr. Brandwein slept in Joel's dormitory every weekend. Often times, it was the only time he got a bed and a shower. On several occasions, Mr. Brandwein would have to throw away the clothes he was wearing from how badly they smelled.

After the initial charge, Mr. Brandwein became increasingly concerned with the University's investigation. So much so, he hired a private investigator named Dan DeCoursey on October 25, 2019. Dan spoke with witnesses, took sworn statements from them, and accompanied Mr. Brandwein to his formal hearing on November 7, 2019. Moreso, On November 4, 2019, Mr. Brandwein sent Melissa Graham an email expressing his concerns. Melissa Graham was the head of the Student Rights and Responsibilities office. Mr. Brandwein expressed to her that the process was not being handled fairly, and even told her that he didn't think that the University would allow his evidence to be presented, and that he was concerned that no video had been presented yet. Melissa Graham informed Mr. Brandwein that the office of general counsel and others would address his concerns. They did not.

On October 23, 2019, Mitchell Jaskela reached out to Mr. Brandwein and requested a meeting. Mitchell Jaskela was a counselor at the Office of Student Outreach and Support. Mr. Brandwein and Mr. Jaskela met on October 24, 2019. After a frustrating conversation, Mr. Brandwein left the office. Mr. Jaskela then filed a fabricated complaint against Mr. Brandwein stating that Mr. Brandwein threatened him with violence. Mr. Jaskela then sent Mr. Brandwein a

follow-up email inviting him back should he need more assistance, and even scheduled a second appointment.

On November 7, 2019, the formal hearing took place at the University. Mr. Brandwein arrived at the Office of Student Rights and Responsibilities and was quickly directed to Jonathan Monte. Mr. Brandwein, equipped with sworn statements, and other letters to present to the board, was told by Jonathan Monte that none of the evidence Mr. Brandwein brought would be allowed to be given to the board. Mr. Brandwein, Jonathan Monte, Christine Natal-Martinez, and Dan DeCoursey went into the hearing. At the hearing, Mr. Brandwein was not allowed to freely question Rebecca Petersen, he was not allowed to present the evidence that he had, and the University did not allow the admission of the video footage into the hearing. None of the testimony provided by witnesses was admitted, and it was clear that the three students on the board had decided the matter before Mr. Brandwein walked in. Even more, at no time was there ever presented any evidence of an injury. Rebecca Petersen never presented evidence that she was injured at any time in the course of this investigation. During the hearing, Officer David Hobson, who was the police officer assigned to this case, testified that Christine Natal-Martinez had the video evidence for upwards of two weeks at the time of the hearing. Even with these discrepancies and doubts, the board moved forward with a charge of Injurious behavior but dropped the charge of disruptive conduct.

On or about November 15, 2019, Mr. Brandwein was allowed to move back into a University Dormitory. Mr. Brandwein had the Florida Prepaid College Program that paid for his housing on campus for the semester. Not only did the University take that money despite only housing Mr. Brandwein for 6 weeks at the time of removal, but they charged Mr. Brandwein an additional roughly $2,200 to stay in that housing for the remainder of the semester.

Mr. Brandwein exercised the final mechanism that the University allowed for an appeal, and that was to have the Dean Danielle McDonald review the recording of the formal hearing, the evidence presented at the hearing, and per the student handbook, in making her decision, the Dean is allowed to consider prior charges even if they are still pending. On November 12, 2019, Dean Danielle McDonald reviewed the investigation and hearing, as well as Mr. Brandwein's pending charge from Mitchell Jaskela and wrote in her November 25, 2019 letter to Mr. Brandwein, "I found no due process errors in the hearing. I also find that the video would not have changed the outcome of the hearing.  Regardless of the situation leading to the incident, you caused injury to another individual.  Therefore, the information would not have changed the outcome of the hearing." On November 14, 2019, two days after Dean Danielle McDonald reviewed this matter, the charge made by Mitchell Jaskela against Mr. Brandwein was dropped.

From October 10, 2019, until roughly November 15, 2019, Mr. Brandwein suffered from a serious housing insecurity. Mr. Brandwein fell into a deep depression. He attempted suicide on at least three known occasions whereby he attempted to jump off of the parking garage that he slept in. He would often wander campus disoriented and hallucinating from lack of sleep. Due to the restriction prohibiting Mr. Brandwein from entering any University housing, no one could house Mr. Brandwein. He was forced to eventually move into a camper trailer off campus that a nearby couple used as an Airbnb. It was located on Sleigh Avenue, a known high crime neighborhood in the area. He spent the remainder of the semester virtually in isolation. He was scared of people, he was scared to be on campus, and he became paranoid thinking that everyone he talked to would find a way to charge him with something. This isolation, coupled with the trauma brought on from homelessness, drove Mr. Brandwein deeper into mental anguish. Fearing another suicide attempt, Mr. Brandwein checked into Memorial Outpatient Behavioral

Hospital, an intensive outpatient program where Mr. Brandwein would go every day for several hours for 4 weeks around April/May of 2020. Mr. Brandwein attempted to gain the buried evidence from USF but they refused to release it. Mr. Brandwein filed a defamation lawsuit against Rebecca Petersen in 2020. He used the lawsuit to gain subpoena power to leverage the University into turning over everything that they refused to turn over before. Mr. Brandwein then dismissed the lawsuit against Rebecca Petersen after obtaining the evidence. As a result of this ordeal, Mr. Brandwein was unable to gain admission to any other state university until Fall Semester of 2020, at which point Mr. Brandwein decided to finish his career at Broward College, a small community college that had recently begun offering 4-year programs. His academic problems did not end there. Despite Mr. Brandwein's 3.56 GPA and his 157 LSAT, he applied to 13 law schools and only got into one. At the time of this complaint, Mr. Brandwein is awaiting admission to the Florida Bar as a Certified Legal Intern. Due to this being on Mr. Brandwein's record, a process that normally takes 3-6 months has now taken nearly a year and is still pending.

## VENUE AND JURISDICTION

1. The Plaintiff, Brian Brandwein ("Mr. Brandwein"), brings forth multiple claims including breach of contract, negligence, civil conspiracy, violation of Title IX, negligent infliction of emotional distress, intentional infliction of emotional distress, promissory estoppel, and a violation of the 14th Amendment. The Plaintiff seeks injunctive relief, damages, and other remedies available under the law.

2. Mr. Brandwein has exhausted all available administrative remedies and has made at least three attempts to engage in discussions regarding potential remedies with the Defendants.

3. The Defendant, University of South Florida (USF), has its principal place of business situated at 4202 E. Fowler Avenue, Tampa, Florida 33620.

4. Venue is appropriate in Hillsborough County, Florida, as a significant portion of the events giving rise to the claims occurred within this jurisdiction. Therefore, the Defendant, USF, falls under the jurisdiction of this court.

5. The Plaintiff is a resident of Broward County, Florida.

6. This court possesses federal question jurisdiction pursuant to 28 U.S.C. § 1331, as the Plaintiff alleges a violation of the Fourteenth Amendment of the United States Constitution and a violation of Title IX.

7. This court holds jurisdiction over this action based on the protection of civil rights, as provided by 28 U.S.C. § 1343.

8. This court exercises supplemental jurisdiction, as outlined in 28 U.S.C. § 1367, over Mr. Brandwein's state court claims of breach of contract, negligence, civil conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, and promissory estoppel. These claims arise from a common set of facts and are closely related to the primary claim of the Fourteenth Amendment violation and the Title IX violation, thus forming part of the same case or controversy.

9. Personal jurisdiction is established over all defendants as they either resided or conducted business within Hillsborough County at the time of the events in question.

## COMMON ALLEGATIONS

1. In the Fall Semester of 2019, Mr. Brandwein enrolled as a student at the University of South Florida.

2. Both Mr. Brandwein and the University of South Florida were obligated to adhere to the student handbook during the Fall Semester of 2019 and the Spring Semester of 2020.

3. Within the 2019-2020 student handbook, a due process clause was incorporated.

4. During the Fall Semester of 2019, Mr. Brandwein and the University of South Florida were both bound by the University's housing and dining contract.

5. Pursuant to this contract, the University of South Florida possessed the authority to temporarily remove Mr. Brandwein from housing pending the outcome of investigations.

6. On October 29, 2019, the University of South Florida permanently evicted Mr. Brandwein from his housing.

7. The University of South Florida breached the housing and dining contract by compelling Brian's permanent relocation from Castor Hall on October 29, 2019.

8. Throughout the investigation, the University of South Florida denied Mr. Brandwein access to review the security camera footage pertaining to the incident.

9. Additionally, the University of South Florida prohibited the inclusion of written testimony from Mr. Brandwein's witnesses during the investigation.

10. Furthermore, the University of South Florida disallowed the admission of sworn statements as evidence during the investigation.

11. Notably, Christine Natal-Martinez, acting on behalf of the University of South Florida, possessed the video footage of the incident at least two weeks prior to the formal hearing held on November 7, 2019.

12. The University of South Florida engaged in fabricating claims against Mr. Brandwein, intending for Dean Danielle McDonald to consider them during her appellate review.

13. Throughout the entire investigation, the University of South Florida never received any substantiating evidence regarding Rebecca Petersen's alleged injuries.

14. Despite multiple emails, voicemails, and notifications expressing concerns about due process violations during the investigation, the University of South Florida negligently ignored Mr. Brandwein's communications.

15. Officer David Hobson, during the formal hearing on November 7, 2019, testified that Defendant Christine Natal-Martinez had been in possession of the video footage for over two weeks at that time.

16. Pursuant to the Student Handbook, Mr. Brandwein timely submitted all the evidence he intended to present by November 4, 2019.

17. Jonathan Monte, the hearing officer, unjustly prohibited the introduction of any evidence during the formal hearing held on November 7, 2019.

18. Despite Mr. Brandwein's attempts to present admissible sworn statements, the University of South Florida rejected their inclusion.

19. On October 29, 2019, Mr. Brandwein met with Defendant Mitchell Jaskela.

20. It was Defendant Mitchell Jaskela who falsely reported that Mr. Brandwein had threatened him with violence.

21. The charge of disruptive conduct was subsequently dropped following the formal hearing on November 7, 2019.

22. Defendant Dean Danielle McDonald, after reviewing the recording of the November 7, 2019 hearing, acknowledged the absence of video evidence but nonetheless upheld the ruling in her letter dated November 25, 2019.

23. Mr. Brandwein fully complied with the sanctions imposed by the University.

24. Consequently, from approximately October 10, 2019, until November 15, 2019, Mr. Brandwein remained without on-campus housing.

25. Mr. Brandwein made at least three attempts to rectify the University's conduct but was unsuccessful.

26. The University's conduct induced depression in Mr. Brandwein, leading him to attempt suicide on three known occasions.

27. Following these distressing events, Mr. Brandwein sought intensive outpatient therapy at a Behavioral Hospital for a duration of four weeks. In addition, he required prescribed supplements and obtained a therapy dog for treatment.

28. Subsequently, medical professionals diagnosed Mr. Brandwein with severe depression, severe anxiety, and post-traumatic stress disorder (PTSD) resulting from the incidents at the University of South Florida.

29. The nature of Mr. Brandwein's condition indicates a probable lifelong need for therapy to manage the trauma inflicted by the University.

30. It is noteworthy that the University of South Florida has demonstrated a similar course of conduct on one other known occasion and has a number of pending lawsuits of similar subject matter..

31. In 2016, the University of South Florida accused Samuel Goetz of rape. Mr. Goetz was expelled from the institution and subsequently litigated the matter. During the discovery

process, it was revealed that Mr. Goetz's accuser initially reported consenting to

intercourse on the night of the encounter but later withdrew her consent due to

subsequent feelings of regret. In 2021, Mr. Goetz's case was ruled in his favor on appeal.

32. The University of South Florida is currently involved in a similar lawsuit filed in

December of 2021; Kevaughn Dingle v. USF. The facts are nearly identical.

33. The University of South Florida's repeated failure to address and rectify this established

pattern of behavior, despite knowledge or should-have-known awareness, constitutes

negligence.

34. As a quasi-judicial body during disciplinary investigations, the University of South

Florida bears responsibility for its actions.

35. Notably, the University of South Florida, being a public institution, receives government

funding in part.

36. The University of South Florida possesses the authority to baselessly revoke on-campus

student housing.

37. Furthermore, the University of South Florida operates without being strictly bound by

any specific rules of evidence or procedure.

38. Students at the University of South Florida are unjustly denied the entitlement to a jury of

their peers.

39. The University of South Florida subjects students to an unregulated "preponderance of

the evidence" standard that lacks oversight from any judicial body.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

40. Mr. Brandwein attempted to mediate these issues with the University of South Florida.

41. Mr. Brandwein sent an email to the President of the University in 2021 and was told by the office of the general counsel that any further correspondence on this matter would go unanswered.

42. Mr. Brandwein has exhausted all the rights and remedies that were known and available to him. This lawsuit will be amended timely to incorporate any other allegations that are necessary to this matter, and/or that have gone unaddressed.

<u>**COUNT I**</u>
<u>**BREACH OF CONTRACT FOR THE  2019-20 HOUSING AND DINING AGREEMENT**</u>
<u>**(AGAINST THE UNIVERSITY OF SOUTH FLORIDA)**</u>

Mr. Brandwein incorporates by reference all allegations of this Complaint in paragraphs 1 through 43 as if set forth fully herein.

43. Mr. Brandwein was a student at the University of South Florida that was living on campus in the Fall Semester of 2019.

44. The University of South Florida binds all students living on campus to a housing and dining agreement and engaged in such a practice in the Fall Semester of 2019.

45. Section II, Paragraph 22, titled "Provisional Removal for Behavior" of the housing contract states "Resident(s) who have been determined to create an immediate danger or threat to the community may be provisionally removed from USF housing until an investigation and a resolution can occur. This authority shall rest with the Assistant Vice President for Housing & Residential Education or designee. Residents will remain financially responsible for the agreement during the provisional removal."

46. The investigation into Mr. Brandwein commenced on October 10, 2019, and concluded on November 25, 2019.

47. Mr. Brandwein was permanently removed from housing on October 29, 2019.

48. Mr. Brandwein's Florida Prepaid College Program funds paid the University of South Florida for the whole semester for housing.

49. Mr. Brandwein was not refunded any of the money given to the University of South Florida by Florida Prepaid.

50. In the interim 7 weeks, Mr. Brandwein incurred costs of living in his vehicle, commuting to Orlando on the weekends, and even taking an Airbnb for some of the time.

51. Mr. Brandwein was only housed for 6 weeks under this contract.

52. After being found not responsible for disruptive conduct, Mr. Brandwein was allowed to return to dormitory housing for an additional fee of roughly $2,200.00.

53. Mr. Brandwein remained in dormitory housing on the second contract for just over 3 weeks.

54. Mr. Brandwein spent a total of nine (9) weeks out of a 16-week semester housed by the University and paid nearly $10,000.00 in fees.

55. Mr. Brandwein exhausted all contractual remedies prior to bringing the claims in this lawsuit.

56. By and through the conduct described above, the University of South Florida engaged in predatory financial practices by accepting a semester's worth of funds from Florida Prepaid, plus another ~$2,200 from the Plaintiff, and only housing him for 9 weeks broken up into segments of 6 weeks, and 3 weeks respectively.

57. The University of South Florida knew or should have known that Mr. Brandwein paid for an entire semester of housing and did not receive it.

58. The University of South Florida knew or should have known that Mr. Brandwein's investigation was ongoing at the time of permanent removal when the contract only allowed for temporary removal.

59. The University of South Florida failed to take any remedial action, nor did they return any funds to Mr. Brandwein

60. Mr. Brandwein suffered damages as a result of the University's breach of contract, by and through its agents, employees, and representatives.

61. As a result of the University of South Florida's conduct, Mr. Brandwein has suffered general and compensatory damages.

62. As further result of the Defendant's conduct, Mr. Brandwein has to pay the costs of this litigation out of pocket.

63. Mr. Brandwein requests that he be awarded reasonable fees and costs of suit.

WHEREFORE, Mr. Brandwein prays that judgement be entered in his favor against the University of South Florida as follows: that Mr. Brandwein be awarded general and compensatory damages, reasonable fees and costs of this action, and any other relief this court deems just and proper.

## COUNT II
## BREACH OF CONTRACT FOR THE 2019-20 STUDENT HANDBOOK
## (AGAINST THE UNIVERSITY OF SOUTH FLORIDA, CHRISTINE NATAL-MARTINEZ, MELISSA GRAHAM, JONATHAN MONTE, AND DANIELLE MCDONALD)

Mr. Brandwein incorporated by reference all allegations of this complaint in paragraphs 1 through 63 as if set forth fully herein.

64. Mr. Brandwein was a student at the University of South Florida in the Fall Semester of 2019.

65. Mr. Brandwein and the Defendant, USF were bound by the 2019-20 Student Handbook.

66. The University of South Florida did not allow Mr. Brandwein to view the evidence against him.

67. The University of South Florida withheld objective video footage from decision making bodies.

68. The University of South Florida ignored independent investigative conclusions by both Dan DeCoursey and USF PD.

69. The University of South Florida did not allow the admission of any evidence from Mr. Brandwein.

70. The University of South Florida ignored Mr. Brandwein's concerns about impartiality and fairness in the disciplinary proceedings in question.

71. The University of South Florida did not present the video evidence at the Formal Hearing on November 7, 2019.

72. Dean Danielle McDonald stated that the video did not matter,

73. Rebecca Petersen never produced any evidence of an injury.

74. Mitchell Jaskela and the administration fabricated a complaint against Mr. Brandwein to give Dean Danielle McDonald leverage in her appellate review.

75. The University of South Florida stacked the "board" with students that were subject to pressure by the University.

76. The University of South Florida put a mentally incapacitated student on Mr. Brandwein's decision-making board.

77. The University of South Florida did not allow Mr. Brandwein to question Rebecca Petersen directly.

78. The University of South Florida did not allow any of Mr. Brandwein's witnesses' testimony.

79. The University of South Florida did not allow testimony from witnesses that were present for the alleged incident.

80. The University of South Florida maintained that behavior that is Injurious is somehow not disruptive.

81. As a result of Defendant University of South Florida's conduct, Mr. Brandwein has suffered general and compensatory damages.

82. As further result of Defendant University of South Florida's conduct, Mr. Brandwein has had to undertake this matter on his own, taking his time away from other matters, and incurring costs.

83. Mr. Brandwein requests that he be awarded reasonable fees and costs of suit.

84. By and through the conduct described above, the University of South Florida permitted a pattern of behavior that is inconsistent with seeking the truth, or any fact-based conclusion in violation of the Student Handbook both parties agreed to upon Mr. Brandwein's enrollment and participation in academic and university activities.

85. Mr. Brandwein suffered damages as a result of the University of South Florida's conduct, by and through its agents, employees, and/or representatives.

86. Mr. Brandwein has suffered damages including compensatory damages for investigative fees, fees for retaining counsel, exclusion from other universities due to academic misconduct, loss of opportunities, emotional distress, pain and suffering, attempted

suicide, isolation, bar application holds, and the like as a result of the Defendant

University of South Florida's conduct, by and through its agents, employees and/or

representatives.

WHEREFORE, Mr. Brandwein prays that judgement be entered in his favor and against the

University of South Florida as follows: that Mr. Brandwein be awarded general damages,

compensatory damages, and punitive damages; that Mr. Brandwein be awarded reasonable fees

for his time and costs of this litigation; that Mr. Brandwein have his academic career cleared;

that the University of South Florida issue correspondence to all governing bodies that rejected

Mr. Brandwein on account of his academic misconduct; that the University of South Florida

issue correspondence to the Florida Board of Bar Examiners and the Florida Bar describing their

malfeasance in persecuting Mr. Brandwein, and that Mr. Brandwein be awarded such other relief

that this court deems just and proper.


## COUNT III
## FOURTEENTH AMENDMENT VIOLATION
## (AGAINST ALL DEFENDANTS)

Mr. Brandwein incorporates by reference all allegations of this Complaint in paragraphs

1 through 86 as if set forth fully herein.

87. Mr. Brandwein, by this civil rights action, brings a claim under the Fourteenth

Amendment of the United States Constitution to vindicate his rights, and hold the

University of South Florida and its officers, employees, administrators, and agents,

accountable for depriving him of the same.

88. The Defendant has deprived Mr. Brandwein of his right not to be deprived of life, liberty, or property without due process, protected by the Fourteenth Amendment.

89. In an apparent attempt to protect itself from the #MeToo movement, the Defendant targeted and penalized Mr. Brandwein for an unsubstantiated, unproven allegation, just to prove that they are allies to the #MeToo social movement and avoid socio-political pressure and consequences.

90. Courts have held that academic judgement by universities may be challenged on a contractual basis, but a challenge on a constitutional due process basis, hinges on public schools being considered state actors for the purpose of the Fourteenth Amendment.

91. Whether or not schools are state actors is undecided at the time of this filing. Their scope has been limited but they have not been conclusively determined to be state actors or not.

92. The Defendant allowed Mr. Brandwein to be without housing, took his money, then buried all of the evidence that was needed to exonerate him. They coached witnesses, pressured decision-making students, and fabricated charges.

93. As a result of the Defendant's conduct, Mr. Brandwein has suffered substantial damages.

94. The Fourteenth Amendment to the United States Constitution clearly articulates: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV.

95. Mr. Brandwein's removal from housing constitutes a deprivation of property under the 14th Amendment. The University of South Florida has the ability to deprive students of

their possessory rights in property unsubstantiated by anything and unbound by rules of evidence or procedure.

96. The University's ability to withhold evidence that can exonerate accused students allows the University to engage in the systematic and baseless removal of students by any means they wish.

97. Mr. Brandwein understands that there are policy reasons behind leaving certain amendments at the door on college campuses such as the right to bear arms and the right to be protected from unreasonable searches and seizures, but the Fourteenth Amendment is not one that is left at the door.

98. By failing to allow Mr. Brandwein to see the evidence presented, fabricating charges, withholding evidence, stacking the board, and generally abusing the judicial process warrants a judgement of a due process breach.

99. If the University of South Florida wishes to function like the government, in that they keep hearings in-house, and have the abilities of the government such as removing students from housing, use students to make disciplinary decisions, facilitate discovery, and sanction students in a manner that can impact their future, they should be bound by the same rules that bind the government, or at least have more judicial oversight then they currently do.

100.     Mr. Brandwein has the right to be innocent until proven guilty, even on a college campus.

101.     The behavior of the administration is indicative of an agenda that makes students guilty until proven innocent.

102.     To the extent that balancing is required, Mr. Brandwein's interest as a citizen first, and a student second, outweigh any potential comprehensible benefit that can be derived from giving the University of South Florida the judicial leeway that they currently have.

103.     The University of South Florida selectively enforces their rules in a manner that works for them, to demonstrate to the community that they are an ally of whatever social movement is popular at that time.

104.     If the State were to behave in such an egregious manner against a criminal defendant, they would be subjected to extreme scrutiny by a higher court, and Mr. Brandwein encourages this honorable court to do the same.

105.     The unlawful conduct of the University of South Florida was taken with malice and reckless indifference to Mr. Brandwein's federally protected rights.

106.     The actions of the University of South Florida, in their official capacity, amount to an inflammatory policy of skewing and weaponizing the judicial system at any time they wish.

107.     The right of a person to have due process is an unalienable right grounded and woven into the fabric of the United States, and students are not a separate class of people that shouldn't be allowed to exercise these unalienable rights for which our ancestors fought and died.

108.     There is no end, that justifies the mean that is persecuting someone without evidence, especially when that evidence has to be pried from the wrongdoers to allow for an independent conclusion by others.

109.     Applying such scrutiny to the facts alleged herein, the Defendant violated Mr.
Brandwein's Constitutional right to be free from deprivation of life, liberty, and property
without due process.

110.     The actions of the University of South Florida injured Mr. Brandwein by taking
away the years that many cherish as their best, impeding his ability to live in a
meaningful way,

111.     Mr. Brandwein feels lost and hurt, and nearly succumbed to his mental anguish.

112.     The acts of the University of South Florida were egregious, wonton, reckless,
malicious, and detrimental, so worthy of punishment that it should shock the conscious of
this court. Substantial sanctions are in order to deter the University of South Florida and
other universities across the state and country from engaging in this type of unlawful
conduct.

113.     The Defendants leveraged their dominion over Mr. Brandwein and weaponized
their administrative disciplinary proceedings. This behavior would have been prevented
should the school have been subjected to the laws and regulations of state actors. They
believe they are above the law, and they act accordingly.

WHEREFORE, Mr. Brandwein prays that: he be awarded damages to compensate Mr.
Brandwein for emotional grief, stress, humiliation, damage to his reputation, and mental anguish
caused by the Defendant's unlawful actions; the court issue an injunction officially making the
University of South Florida a state actor as it pertains to the Fourteenth Amendment of the
United States Constitution; the court order the University to remove all claims of academic
misconduct arising from this incident and set of facts from Mr. Brandwein's academic record;
the court order the Defendant to write letters to all of the institutions to which Mr. Brandwein

sought admission; the court order the Defendant to write a letter to the Florida Bar and the Florida Board of Bar Examiners describing their violations and clearing Mr. Brandwein's name; the court order the Defendant to release a statement to the press admitting to their wrongdoing; that Mr. Brandwein be awarded reasonable fees and costs for litigation expenses, and any other relief that this honorable court deems just and proper, and the Mr. Brandwein recover punitive damages from the Defendant for their willful conduct.

### COUNT IV
### NEGLIGENCE
### (AGAINST THE UNIVERSITY OF SOUTH FLORIDA)

Mr. Brandwein incorporates by reference all allegations of this Complaint in paragraphs 1 to 113 as if set fully forth herein.

114. This claim of negligence is against the University of South Florida for the negligent use of the student disciplinary process. The University of South Florida exposed Mr. Brandwein to unreasonable risks of harm, and injury.

115. The negligent acts of the University of South Florida's agents and employees were done while acting within the course and scope of their employment and/or agency with the University of South Florida, thus the Defendant, University of South Florida is vicariously liable for the actions of its agents and employees when they committed the negligent acts alleged herein.

116. The Defendant, University of South Florida, owed Mr. Brandwein a non-delegable duty to use reasonable care in the actions and precautions they took in the course of investigating Mr. Brandwein.

117. The Defendant, University of South Florida, failed to perform its duty to use reasonable care to ensure that Mr. Brandwein was subjected to nothing other than a fair and impartial investigation. The University's willful and careless conduct exposed Mr. Brandwein to the dangers associated with sleeping on the street in a high-crime area (and lack of sleep thereof), sleep deprivation induced hallucinations and disorientation.

118. The recklessness and negligence exhibited by the University of South Florida and its employees and agents, were the direct and proximate cause of the personal injuries sustained by Mr. Brandwein and directly and proximately resulted in his diagnosis of General Depressive Disorder, Severe Anxiety, and Post Traumatic Stress Disorder.

WHEREFORE, as a result of the conduct of the University of South Florida, in violation of the Fourteenth Amendment, and the two contracts entered into by Mr. Brandwein and the University of South Florida, Mr. Brandwein seeks all possible damages including: compensatory damages, general damages, pain and suffering, future medical care, removal of violation from academic records, correspondence to the Florida Bar and the Florida Board of Bar Examiners explaining their wrongdoing, punitive damages for the repeat nature of the University's conduct, and any other relief this court deems just an proper.

### COUNT V
### NEGLIGENCE
### (AGAINST CHRISTINE NATAL-MARTINEZ)

Mr. Brandwein incorporates by reference all allegations of this Complaint in paragraphs 1 through 118 as if set fully forth herein.

119. This negligence claim is against Defendant Christine Natal-Martinez for her negligence both in her capacity as an initial review officer and in her rogue actions outside of the scope of employment.

120. The negligent acts of Defendant Christine Natal-Martinez were done both while acting within the course and scope of her employ and independently from her employment duties. Thus Defendant University of South Florida is vicariously liable for the negligent acts taken within Ms. Natal-Martinez's scope of employment and Ms. Natal-Martinez is personally liable for negligent acts that fall outside the scope of her employment.

121. Defendant Christine Natal-Martinez owed Mr. Brandwein a duty to present and bring forward all evidence against him during the course of his disciplinary proceedings at the University of South Florida.

122. Defendant Christine Natal-Martinez breached that duty when she never presented the video evidence received from USF Police Department causing Mr. Brandwein to continue to be without housing.

123. Defendant Christine Natal-Martinez then issued a baseless decision finding Mr. Brandwein responsible of all charges and withheld evidence from him until it was compelled in a separate litigation action in 2020.

124. Whether or not she did so at the order of her superiors is left to be uncovered during discovery.

125. Ms. Natal-Martinez knowingly, willfully, and recklessly ignored Mr. Brandwein's pleas for her to recuse herself due to bias, and ignored his pleas for help.

126. Ms. Natal-Martinez's failure to use reasonable care in the investigative process, and her partiality towards Mr. Brandwein's accuser and input of personal bias in handling this matter was the direct and proximate cause of Mr. Brandwein's injuries.

WHEREFORE, as a result of the injuries sustained by Brian Brandwein, in violation of state and federal law, Mr. Brandwein now seeks all possible damages under state law, including the following: general damages, compensatory damages, punitive damages, injunctive relief, and any other damages this court deems just and proper.

<u>COUNT VI</u>

<u>CIVIL CONSPIRACY</u>

<u>(AGAINST DEFENDANT CHRISTINE NATAL-MARTINEZ, DEFENDANT
JOHNATHAN MONTE, DEFENFANT MITCHELL JASKELA AND DEFENDANT
MELLISSA GRAHAM)</u>

Mr. Brandwein incorporates by reference all allegations of this Complaint in paragraphs 1 through 126 as if set fully forth herein.

127. Under Florida law, in order to state a claim for civil conspiracy, a plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." <u>Phillip Morris USA, Inc. v. Russo</u>, 175 So. 3d 681, 686 n.9 (Fla. 2015) (citing Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997)).

128. A civil conspiracy derives from the underlying claim that forms the basis of the conspiracy. <u>Florida Fern Growers Ass'n, Inc.; Wright v. Yurko</u>, 446 So.2d 1162 (Fla. 5th DCA 1984). A civil conspiracy claim can also exist where the plaintiff can show some

"peculiar power of coercion" possessed by the conspirators by virtue of their combination, which an individual acting alone does not possess. Churruca v. Miami Jai-Alai, Inc., 353 So.2d 547 (Fla.1977).

129. In the course of the University of South Florida's investigation against Mr. Brandwein, he was told that in the course of Dean Danielle McDonald's review, she would be allowed to consider prior charges against Mr. Brandwein as part of his appeal even if they were not conclusive.

130. At this point, Defendant Mitchell Jaskela has filed a fabricated threat of violence charge for the Dean to use during her appeal. After it was processed by Defendant Melissa Graham, it remained open from on or around November 1, 2019 and was suddenly dismissed on November 14, 2019. Defendant Danielle McDonald issued her decision on Mr. Brandwein's appeal on November 12, 2019.

131. Mr. Brandwein believes that the Office of Student Rights and Responsibilities and Defendant Mitchell Jaskela conspired to breach Mr. Brandwein's rights and ensure he would be found guilty by the Dean for Injurious and Disruptive conduct.

WHEREFORE, as a result of the injuries sustained by Brian Brandwein, in violation of state and federal law, Mr. Brandwein now seeks all possible damages under state law, including the following: general damages, compensatory damages, punitive damages, injunctive relief, and any other damages this court deems just and proper.

## COUNT VII
## NEGLIGENCE
## (AGAINST DEFENDANT MELISSA GRAHAM)

Mr. Brandwein incorporates by reference all allegations of this complaint in paragraphs 1 through 131 as if set fully forth herein.

132.     This negligence claim is against Defendant Melissa Graham for her negligence both in her capacity as the oversight for the Office of Student Rights and Responsibilities and in her rogue actions outside of the scope of employment.

133.     The negligent acts of Defendant Melissa Graham were done both while acting within the course and scope of her employ and independently from her employment duties. Thus Defendant University of South Florida is vicariously liable for the negligent acts taken within Ms. Graham's scope of employment and Ms. Graham is personally liable for negligent acts that fall outside the scope of her employment.

134.     Defendant Melissa Graham owed Mr. Brandwein a duty to address and mitigate his concerns and facilitate and referee ethical and impartial behavior among her subordinates during the course of his disciplinary proceedings at the University of South Florida.

135.     Defendant Melissa Graham breached that duty when she ignored his pleas for help and did not step in and admit evidence into a hearing where disciplinary decisions were going to be made.

136.     Ms. Graham knowingly, willfully, and recklessly ignored Mr. Brandwein's pleas for assistance and did not adequately oversee her subordinates.

137.     Ms. Graham's failure to use reasonable care in overseeing her subordinates,

ignoring Mr. Brandwein's complaints of unethical and unfair behavior, and the

facilitation of a civil conspiracy were the direct and proximate causes of Mr. Brandwein's

injuries.

WHEREFORE, as a result of the injuries sustained by Brian Brandwein, in violation of state

and federal law, Mr. Brandwein now seeks all possible damages under state law, including the

following: general damages, compensatory damages, punitive damages, injunctive relief, and any

other damages this court deems just and proper.


**COUNT VIII**

**NEGLIGENCE**

**(AGAINST DEFENDANT MITCHELL JASKELA)**

Mr. Brandwein incorporates by reference all allegations of this Complaint in paragraphs 1

through 137 as if set fully forth herein.

138.     This negligence claim is against Defendant Mitchell Jaskela for his negligence

both in his capacity as a counselor in the Office of Student Outreach and Support and in

his rogue actions outside of the scope of employment.

139.     The negligent acts of Defendant Mitchell Jaskela were done both while acting

within the course and scope of his employ and independently from his employment

duties. Thus Defendant University of South Florida is vicariously liable for the negligent

acts taken within Mr. Jaskela's scope of employment and Mr. Jaskela is personally liable

for negligent acts that fall outside the scope of his employment.

140.     Defendant Mitchell Jaskela owed Mr. Brandwein a duty to counsel, and refer Mr. Brandwein to proper mental wellness resources when he facilitated a meeting with Mr. Brandwein.

141.     Defendant Mitchell Jaskela breached that duty when he not only failed to refer Mr. Brandwein to a mental wellness resource, but also fabricating a complaint against Mr. Brandwein saying that Mr. Brandwein threatened him with violence, then subsequently inviting Mr. Brandwein back to his office for another meeting.

142.     Mr. Jaskela knowingly, willfully, and recklessly failed to refer Mr. Brandwein to proper resources and then engaged in a civil conspiracy.

143.     Mr. Jaskela's failure to use reasonable care in carrying out his duties at the Office of Student Outreach and Support and being the complainant in a civil conspiracy against Mr. Brandwein were the direct and proximate causes of Mr. Brandwein's injuries.

WHEREFORE, as a result of the injuries sustained by Brian Brandwein, in violation of state and federal law, Mr. Brandwein now seeks all possible damages under state law, including the following: general damages, compensatory damages, punitive damages, injunctive relief, and any other damages this court deems just and proper.

## COUNT IX
## NEGLIGENCE
## (AGAINST DEFENDANT DANIELLE MCDONALD)

Mr. Brandwein incorporates by reference all allegations of this complaint in paragraphs 1 through 143 as if set fully forth herein.

144.    This negligence claim is against Defendant Danielle McDonald for her negligence both in her capacity as the Dean of Students and in her rogue actions outside of the scope of employment.

145.    The negligent acts of Defendant Danielle McDonald were done both while acting within the course and scope of her employ and independently from her employment duties. Thus Defendant University of South Florida is vicariously liable for the negligent acts taken within Ms. McDonald's scope of employment and Ms. McDonald is personally liable for negligent acts that fall outside the scope of her employment.

146.    Defendant Danielle McDonald owed Mr. Brandwein a duty to conduct a fair and impartial post-hearing investigation of Mr. Brandwein's concerns during the course of his disciplinary proceedings at the University of South Florida.

147.    Defendant Danielle McDonald breached that duty when she plainly ignored his pleas for help and did not even inquire as to where any withheld evidence was. She then doubled down and plainly stated that the video would not have changed the outcome of the hearing and that Mr. Brandwein caused injury to another student where no injury was ever displayed or proven.

148.    Ms. McDonald knowingly, willfully, and recklessly ignored Mr. Brandwein's pleas for assistance and did not conduct a fair and impartial investigation or inquiry about buried evidence.

149.    Ms. McDonald's failure to use reasonable care in her appellate position, ignoring Mr. Brandwein's complaints of unethical and unfair behavior, and the issuing of a decision without looking at any evidence were the direct and proximate causes of Mr. Brandwein's injuries.

WHEREFORE, as a result of the injuries sustained by Brian Brandwein, in violation of state and federal law, Mr. Brandwein now seeks all possible damages under state law, including the following: general damages, compensatory damages, punitive damages, injunctive relief, and any other damages this court deems just and proper.

## COUNT X
## NEGLIGENCE
## (AGAINST DEFENDANT JONATHAN MONTE)

Mr. Brandwein incorporates by reference all allegations of this Complaint in paragraphs 1 to 149 as if set forth fully herein.

150.     This negligence claim is against Defendant Jonathan Monte for his negligence both in his capacity in the Office of Student Rights and Responsibilities and in his rogue actions outside of the scope of employment.

151.     The negligent acts of Defendant Jonathan Monte were done both while acting within the course and scope of his employ and independently from his employment duties. Thus Defendant University of South Florida is vicariously liable for the negligent acts taken within Mr. Monte's scope of employment and Mr. Monte is personally liable for negligent acts that fall outside the scope of his employment.

152.     Defendant Jonathan Monte owed Mr. Brandwein a duty to facilitate a fair and impartial formal hearing as an oversight officer.

153.     Defendant Jonathan Monte breached that duty when despite Mr. Brandwein's submission of evidence in compliance with the student handbook, Jonathan Monte did not allow any of Mr. Brandwein's evidence to be submitted to the board.

154.     Mr. Monte knowingly, willfully, and recklessly barred Mr. Brandwein's testimony and witness' statements at the formal hearing.

155.     Mr. Monte's failure to use reasonable care in carrying out his duties at the Office of Student Rights and Responsibilities was the direct and proximate cause of Mr. Brandwein's injuries.

WHEREFORE, as a result of the injuries sustained by Brian Brandwein, in violation of state and federal law, Mr. Brandwein now seeks all possible damages under state law, including the following: general damages, compensatory damages, punitive damages, injunctive relief, and any other damages this court deems just and proper.

## COUNT XI
## TITLE IX VIOLATION
## (AGAINST THE UNIVERSITY OF SOUTH FLORIDA)

Mr. Brandwein incorporates by reference all allegations of this Complaint in paragraphs 1 through 155 as if set fully forth herein.

156.     Section 1681 of Title IX states " No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

157.     Pursuant to 20 U.S.C. § 1681, Title IX is a federal statute designed to prevent sex-based discrimination and/or harassment in educational institutions receiving federal funding.

158.     Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, applies to all public and private educational institutions that receive federal funds, including

colleges and universities. The statute prohibits discrimination based on sex in a school's "education program or activity," which includes all of the school's operations. Title IX provides in pertinent part: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The United States Supreme Court has held that Title IX authorizes private suits for damages in certain circumstances.

159.    USF receives federal financial assistance and is thus subject to Title IX.

160.    Title IX includes an implied right of private action, without any requirement that administrative remedies, if any, be exhausted. An aggrieved plaintiff may seek money damages and other relief.

161.    Mr. Brandwein was subjected to discrimination by all of the named Defendants in the course of his time as a student at the University of South Florida.

162.    The University of South Florida was wrongfully subjecting Mr. Brandwein to proceedings because of his male gender and the as a consequence of the University of South Florida's anti-male-gender-bias which created a hostile and dangerous environment for Mr. Brandwein.

163.    Both the DOE and the DOJ have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student…complaints alleging any action which would be prohibited by" Title IX or its regulations. 34 C.F.R. § 106.8(b) (Department of Education); 28 C.F.R. § 54.135(b) (Department of Justice).

164.    Title IX mandates USF afford equitable procedures and due process to Brian

Brandwein, a qualified male student of USF, which includes, but is not limited to: (a)

having proper jurisdictional authority to conduct an investigation; (b) providing adequate,

reliable, and impartial investigation of complaints, including the opportunity to present

witnesses and other evidence, and/or (c) that USF employees involved in the conduct of

the procedures have adequate training.

165.    As described in part in this Complaint, USF knew, or in the exercise of due care

should have known, that the October 2019 complaint submitted by Rebecca Petersen was

false, and USF therefore lacked jurisdiction under Title IX and USF Policies to prosecute

Mr. Brandwein for his consensual and playful encounter with Rebecca Petersen.

166.    Upon information and belief, USF knew, or in the exercise of due care should

have known, that its employees, including but not limited to Christine Natal-Martinez,

Melissa Graham, Mitchell Jaskela, Jonathan Monte, and Danielle McDonald, received

gender-biased training regarding Title IX which caused them to violate USF policies and

Title IX rights in part by equating "complainants" in misconduct proceedings as being

females who must receive preferential treatment over their male counterparts.

167.    The University of South Florida's administration not only withheld evidence from

the hearing boards, but also allowed Rebecca Petersen, Mr. Brandwein's accuser to

continue running around and defaming him. Even though the University knew that her

behavior was inconsistent with that of a victim, they knew that she was not a victim of

any violence or injury by Mr. Brandwein, and the University of South Florida continued

prosecuting Mr. Brandwein anyway, knowing full well that he did not violate any terms

of the student handbook, or USF policies.

168.     An unintended consequence of the modern interpretation of Title IX is to blindly believe the claims brought forward by females even if they are unsubstantiated. The University of South Florida was not different than any other school in adopting such a practice.

169.     USF's policies and/or USF's gender-biased implementation of these policies, fail to meet the standards required by Title IX and/or safeguards as interpreted by United States' courts regarding how institutions of higher education must conduct disciplinary proceedings. As a result, Mr. Brandwein has suffered the adverse actions detailed herein, which include but are not limited to interference with his education, harm to his reputation, monetary damages, and detriment to his wellbeing.

170.     USF created an environment in which male students accused of assault of any kind, such as Brian Brandwein, are fundamentally denied rights owed under USF policies as to be virtually assured of a finding of guilt. Such a biased and one-sided process deprives male USF students like Brian Brandwein of educational opportunities based on their gender. Upon information and belief, USF has, at least in part, adopted such discriminatory policies to refute criticism within the student body and public press that USF is turning a blind eye to female complaints of any kind and out of fear of losing federal student aid.

171.     Upon information and belief, USF's investigation and/or discipline of Mr. Brandwein was taken in order to demonstrate to DOE / OCR and/or the general public that USF is: (a) aggressively disciplining male students accused of sexual assault; and (b) providing females involved in misconduct proceedings with preferential treatment not provided to males.

172.     USF has actual or constructive knowledge that USF's disciplinary Proceedings against Brian Brandwein posed a pervasive and unreasonable risk of gender discrimination with regard to Mr. Brandwein.

173.     USF's actions and inactions detailed in this Complaint set in motion a series of events that USF knew, or reasonably should have known, would cause male USF students, such as Mr. Brandwein, to suffer unlawful gender discrimination.

174.     USF's actions and inactions detailed in this Complaint set in motion a series of events that USF knew, or reasonably should have known, would cause male USF students, such as Mr. Brandwein, to suffer a hostile environment based on gender in part by subjecting male students to disciplinary hearings which do not satisfy USF Policies' disciplinary hearings threshold criteria.

175.     USF's disciplinary Proceeding against Mr. Brandwein was discriminatory and based upon or motivated by Brian Brandwein's male gender.

176.     USF employees, including but not limited to Christine Natal-Martinez, Melissa Graham, Mitchell Jaskela, Jonathan Monte, and Danielle McDonald, unlawfully failed to exercise the authority to institute corrective measures to remedy USF's violations of Mr. Brandwein's rights under USF policies, Title IX, and/or guidance promulgated by OCR.

177.     USF employees, including but not limited to Christine Natal-Martinez, Melissa Graham, Mitchell Jaskela, Jonathan Monte, and Danielle McDonald, exhibited deliberate indifference based on gender-bias by refusing to remedy USF's violations of Brian Brandwein's rights under USF policies, Title IX, and/or guidance promulgated by OCR.

178.     USF's deliberate indifference caused Brian Brandwein to suffer harassment, retaliation, and/or discrimination so severe, pervasive or objectively offensive that it

deprived Brian Brandwein of access to educational opportunities or benefits and caused

other harm and damages detailed above.

179.     Upon information and belief, USF possesses additional documentation evidencing

USF's unlawful pattern of gender-biased decisions to provide preferential treatment to

female students over male students like Brian Brandwein who are falsely accused of

conduct violations.

180.     Upon information and belief, USF possess additional documentation evidencing

USF's refusal to discipline female students who were alleged to have assaulted or

harassed male students or who have filed false charges of assault against innocent male

students.

181.     USF's violations of Title IX caused Brian Brandwein to be damaged in an amount

to be determined at trial.


## COUNT XII
## PROMISSORY ESTOPPEL
## (AGAINST DEFENDANT UNIVERSITY OF SOUTH FLORIDA)

Mr. Brandwein incorporates by reference all allegations of this Complaint in paragraphs

1 through 181 as if set fully forth herein.

182.     As described in part in this Amended Complaint and in the other documents

previously submitted in this lawsuit: (a) Brian Brandwein detrimentally relied on USF's

promise contained in USF policies to protect his educational experience from unlawful

harassment based on defamation and other unlawful grounds, which allowed, among

other things, USF's students such as Rebecca Petersen to make repeated, false public

allegations of assault against Mr. Brandwein with impunity and without fear of punishment and allowing USF's students to pass judgement and spread falsehoods without taking any action to stop the perpetrators of this harassment; and (b) Brian Brandwein's detrimental reliance on these promises and subsequent damages for USF's breach of these promises were foreseeable to USF.

183.     As described in part in this Amended Complaint and in the other documents previously submitted in this lawsuit: (a) Mr. Brandwein detrimentally relied on USF's promises contained in USF policies to adjudicate complaints in a fair and impartial manner, including but not limited to: (i) undertaking a thorough investigation into Rebecca Petersen's complaint of assault, which would have revealed the falsehoods then being disseminated by Rebecca Petersen against him; and (ii) bringing forth all evidence at a formal hearing and throughout investigation; and (b) Brian Brandwein's detrimental reliance on these promises and subsequent damages for USF's breach of these promises were foreseeable to USF.

184.     As described in part in this Complaint: (a) Brian Brandwein detrimentally relied on the aforementioned USF promises; and (b) Brian Brandwein's detrimental reliance on these promises and subsequent damages for USF's breach of these promises were foreseeable to USF.

185.     As described in part in this Complaint: (a) Brian Brandwein detrimentally relied on USF's promises, contained in USF's polices which including, but were not limited to, USF's promise in USF's 2019 Manual which stated in all disciplinary actions USF is committed to providing a prompt, fair, impartial, and thorough investigation and resolution that is consistent with the University's policies; and (b) Brian Brandwein's

detrimental reliance on these promises and subsequent damages for USF's breach of these promises were foreseeable to USF.

186.     As described in part in this Complaint: (a) Brian Brandwein detrimentally relied on USF's promises, contained in USF's polces which including, but were not limited to, USF's promise in USF's 2019 Manual which stated USF's policies would be implemented in a manner consistent with federal, state, and local regulations governing non-discrimination and unlawful harassment including Title IX, and (b) Brian Brandwein's detrimental reliance on these promises and subsequent damages for USF's breach of these promises were foreseeable to USF.

187.     USF's breaches of the aforementioned promises required Brian Brandwein to abandon his previous career choice, and undertake studies in law and front costs for this complaint, which caused Mr. Brandwein to be damaged in an amount to be determined at trial.

## COUNT XIII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

Mr. Brandwein incorporates by reference all allegations of this Complaint in paragraphs 1 through 187 as if set fully forth herein.

188.     As described in part in this Complaint: (a) USF owed Brian Brandwein a duty to honor the provisions of USF's 2019-20 Manual and/or USF's Policies; (b) until the institution of this lawsuit, USF breached that duty by, by among other things, withholding evidence, suppressing witness testimony, and fabricating charges and (c) USF's breach of this duty is the cause in fact and legal cause of Brian Brandwein's injuries.

189.     As described in part in this Complaint, USF owed Brian Brandwein a duty to honor the provisions of USF's 2019-20 Manual, and/or USF's policies. Until the institution of this lawsuit, USF breached these duties by, among other things, failing to make the required investigation into Brian Brandwein's October 2019 accusation which would have established the falsehoods disseminated by Rebecca Petersen against Brian Brandwein. USF's breach of these duties is the proximate cause of Brian Brandwein's injuries.

190.     As described in part in this Complaint: (a) USF owed Brian Brandwein a duty to honor the provisions of USF's 2019 Manual, and/or USF's policies; (b) until the institution of this lawsuit, USF breached these duties by, among other things, not allowing the Brian Brandwein defend himself in any capacity against Rebecca Petersen; and (c) USF's breach of this duty is the proximate cause of Brian Brandwein's injuries.

191.     As described in part in this Complaint: (a) USF owed Brian Brandwein a duty to honor the provisions in USF's 2019-20 Manual and/or USF policies: (b) USF owed Brian Brandwein a duty to honor USF's promises, contained in USF's polices which including, but were not limited to, USF's promise in USF's 2019-20 Manual which stated in all cases of alleged misconduct USF is committed to providing a prompt, fair, impartial and thorough investigation and resolution that is consistent with the University's policies and is transparent to the complainant and the respondent; (c) until the institution of this lawsuit, USF breached these duties by not providing a prompt, fair, impartial and thorough investigation and resolution of the complaints against Brian Brandwein submitted by Rebecca Petersen; and (d) USF's breach of this duty is the proximate cause of Brian Brandwein's injuries.

192.     As described in part in this Complaint: (a) USF owed Brian Brandwein a duty to honor USF's promises, contained in USF's polices, which included but were not limited to USF's promise in USF's 2019-20 Manual which stated USF's policies would be implemented in a manner consistent with federal, state, and local regulations governing non-discrimination and unlawful harassment including Title IX, (b) until the institution of this lawsuit, USF breached these duties in part by allowing Mr. Brandwein to be subjected to Rebecca Petersen's falsehoods and prosecuting Mr. Brandwein in a manner that is in violation of Title IX; and (c) USF's breach of this duty is the proximate cause of Brian Brandwein's injuries.

193.     USF's negligence caused Brian Brandwein to be damaged in an amount to be determined at trial.

## COUNT XIV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

Mr. Brandwein incorporates by reference all allegations of this Complaint in paragraphs 1 through 193 as if set fully forth herein.

194.     USF's conduct detailed in this Complaint, particularly with respect to the intentional misconduct of Christine Natal-Martinez, Mitchell Jaskela, Jonathan Monte, Melissa Graham, and Dean Danielle McDonald, was extreme and outrageous and exercised with the specific intent to inflict emotional distress on Brian Brandwein by unlawfully maximizing the chances that Brian Brandwein would be held responsible for a false and retaliatory allegation of misconduct that the parties knew to be false and unsubstantiated.

195.     USF, Christine Natal-Martinez, Mitchell Jaskela, Jonathan Monte, Melissa Graham, and Danielle McDonald knew there was at least a high probability that their conduct would cause severe emotional distress to Brian Brandwein by subjecting him to the fear of an unlawful prosecution for an alleged crime that Brian Brandwein did not commit and for which all parties knew there was compelling evidence of Brian Brandwein's innocence.

196.     USF, Christine Natal-Martinez, Mitchell Jaskela, Jonathan Monte, Melissa Graham, and Danielle McDonald intended their conduct to inflict severe emotional distress or knew there was at least a high probability that their conduct would cause severe emotional distress to Brian Brandwein.

197.     USF, Christine Natal-Martinez, Mitchell Jaskela, Jonathan Monte, Melissa Graham, and Danielle McDonald's conduct caused Brian Brandwein to suffer severe emotional distress which required, among other things, Brian Brandwein to seek professional psychological and psychiatric treatment and to undergo intensive measures to mitigate his risk of attempting suicide.

198.     USF's aforementioned conduct caused Brian Brandwein to be damaged in an amount to be determined at trial.


**COUNT XV**
**DAMAGES**

Mr. Brandwein incorporates by reference all allegations of this Complaint in paragraphs 1 through 198 as if set fully forth herein.

199.    As set forth above, the Defendants violated state and federal law, and breached their contractual obligations to Mr. Brandwein.

200.    As of May 16, 2023, Mr. Brandwein is still dealing with the repercussions of the actions of the University of South Florida and the other named Defendants.

201.    Mr. Brandwein suffered immense difficulties getting into a different undergraduate institution and was diagnosed with major depressive disorder, severe anxiety, and post-traumatic stress disorder.

202.    Mr. Brandwein finished his undergraduate program with a 3.56 GPA and a 157 LSAT score. He applied to 13 law schools and 12 of them rejected him on the basis of this disciplinary action.

203.    Mr. Brandwein, in seeking admission to the Florida Bar, has had his application on hold for nearly a year. Mr. Brandwein filed his bar application at the end of June, 2022, hoping he would find out whether or not he could be a lawyer before spending the money to attend law school. As a result of this investigation, Mr. Brandwein has had his application on hold for nearly a full year.

204.    At the time of this filing, Mr. Brandwein has been called for an investigative hearing before the bar to determine whether or not he can be an attorney as a result of the events leading to this cause of action. He will have to spend $250 for an administrative hearing fee on top of hiring counsel which has cost him an additional $3,000.

205.    Mr. Brandwein is currently precluded from his engagement in clinical programs and pro-bono work representation due to his lack of clearance from the Florida Bar.

206.    The valuable experience which Mr. Brandwein is set to miss out on may cost him in initial earning capacity upon leaving school.

207.     The University of South Florida has a history of engaging in this form of reckless ignorance to statements of fact that they then withhold from the accused.

208.     Mr. Brandwein seeks an injunction to correct the Defendant's violations, including but not limited to:

A.  A complete removal of this matter from Mr. Brandwein's academic history.

B.  Correspondence to all universities, academic institutions, jobs, or professional licensing boards where Mr. Brandwein tried in the past or is currently seeking admission.

C.  The inclusion of judicial oversight if the University wishes to continue disciplinary actions in-house, or the ceasing of in-house quasi-judicial action against students.

WHEREFORE, Brian Brandwein demands judgment and relief against USF as follows:

A.  Compensatory damages in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000) to compensate Brian Brandwein's past and future pecuniary and/or non-pecuniary damages caused by USF's conduct;

B.  Punitive damages in an amount sufficient to deter USF and other defendants from conducting similar future conduct, but in no event less than Four Million Dollars ($4,000,000);

C.  Judgment for fees pursuant any applicable statute;

D.  Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

E.  Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

F.  Such other and further relief as this court may deem just, proper, equitable, and

appropriate.

**<u>DEMAND FOR JURY TRIAL</u>**

Mr. Brandwein demands a trial by jury for all matters so triable.

DATED: June 6, 2023

Respectfully submitted,

**SIGNED:**_____*/s/ Brian L. Brandwein*_____

Brian Brandwein

Pro Se Litigant

409 SE 16th Court

Fort Lauderdale, Florida 33316

Email: brianbrandwein@gmail.com

Phone: (954) 830-2413