UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN BRANDWEIN,

    Plaintiff,

v.                                                                                  Case No.  8:23-cv-1251-TPB-NHA

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF SOUTH FLORIDA, et al.,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
"DEFENDANTS' MOTION TO DISMISS AND TO STRIKE"**

This matter is before the Court on "Defendants' Motion to Dismiss and to Strike," filed on October 4, 2023. (Doc. 22). On October 23, 2023, Plaintiff filed a response in opposition to the motion. (Doc. 25). After reviewing the motion, response, court file, and the record, the Court finds as follows:

**Background**[1]

Plaintiff Brian Brandwein was a student at the University of South Florida ("USF"). According to Plaintiff, on October 29, 2019, he was "permanently" removed from on-campus student housing while an investigation against him was pending.[2]

---

[1] The Court accepts as true the facts alleged in Plaintiff's amended complaint for purposes of ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[2] Plaintiff does not clearly explain the nature of the investigation. He states that he was accused of "disruptive conduct and injurious behavior" but otherwise does not identify the facts underlying the investigation in his complaint.

Plaintiff alleges that his removal was in violation of the housing and dining agreement for students and violated his constitutional and statutory rights. He alleges that he was found "not responsible for disruptive conduct" and was allowed to return to dormitory housing with an additional fee the next semester.

## **Legal Standard**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

As Plaintiff in this case proceeds *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, a *pro se*

plaintiff must still conform to procedural rules, and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

## Analysis

### *Official Capacity Claims*

The individual Defendants argue that the official capacity claims against them are duplicative of the claims against The Board of Trustees of the University of South Florida and should be dismissed. The Court agrees. Here, because the Board has been named as a § 1983 defendant, the official capacity claims against the individual board members are duplicative, which serves no proper purpose and may confuse a jury. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991); *C.P. by and through Perez v. Collier Cty.*, 145 F. Supp. 3d 1085, 1091 (M.D. Fla. 2015). Consequently, the claims against Defendants Christine Natal-Martinez, Jonathan Monti, Mitchell Jaskela, Danielle McDonald, and Melissa Graham in their official capacities are dismissed without prejudice.

### *Eleventh Amendment Immunity*

The Board argues that many of Plaintiff's claims are precluded by Eleventh Amendment immunity. The Eleventh Amendment provides a state with immunity from suits by private individuals in federal court unless the state has consented to be sued, waived its immunity, or Congress has abrogated the state's immunity. *Doe v. Florida Gulf Coast University Board of Trustees*, No. 2:23-cv-245-SPEC-KCD, 2023 WL 5834865, at *2 (M.D. Fla. Sept. 8, 2023). The USF Board, as the governing body of a state university, is an "arm" of Florida and may be entitled to Eleventh Amendment

immunity.  *See University of South Florida Board of Trustees v. CoMentis, Inc.*, 861 F.3d 1234, 1237 (11th Cir. 2017) (citing *Williams v. District Bd. of Trustees of Edison Community College, Fla.*, 421 F.3d 1190, 1195 (11th Cir. 2005)); *Souto v. Fla. Int'l Univ. Found., Inc.*, 446 F. Supp. 3d 983, 990 (S.D. Fla. 2020) (collecting cases).

<u>Counts I, II, and VII</u>

In Counts I, II, and VII, Plaintiff asserts breach of contract and unjust enrichment claims.  As the Board correctly points out, Eleventh Amendment immunity bars Plaintiff's breach of contract claims in federal courts.  *See Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1288 (11th Cir. 2003) (holding breach of contract claim in federal court was barred on Eleventh Amendment immunity grounds); *Doe*, 2023 WL 5834865, at *2.

"[A] claim for unjust enrichment sounds in equity and is based on an implied contract." *Wells v. Bd. of Trustees of Florida Gulf Coast University*, No. 2:19-cv-859-JL-NPM, 2021 WL 883333, at *3 (M.D. Fla. Feb. 8, 2021), *report and recommendation adopted,* 2021 WL 878879, at *1 (M.D. Fla. Mar. 9, 2021).  And as the Court explained, breach of contract claims are barred in federal court under the Eleventh Amendment.  But even putting that aside, the state of Florida continues "to enjoy sovereign immunity from quasi-contractual claims such as unjust enrichment" in its own courts.  *Id*. (quoting *Veolia Water N. Am. -S, LLC v. City of Everglades City*, No. 2:18-cv-785-FTM-99UAM, 2019 WL 1921900, at *4 (M.D. Fla. Apr. 30, 2019)).

Consequently, Counts I, II, and VI are dismissed for lack of subject matter jurisdiction.

Count III

In Count III, Plaintiff asserts a claim under 42 U.S.C. § 1983 for an alleged violation of his constitutional rights.  However, § 1983 claims are barred by Eleventh Amendment immunity.  *Doe*, 2023 WL 5834865, at *2 (citing *Henry v. Florida Bar*, 701 F. App'x 878, 880-81 (11th Cir. 2017); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)).  Consequently, Count III is dismissed for lack of subject matter jurisdiction.

Counts V, VI, and VIII

In Counts V, VI, and VIII, Plaintiff asserts various state law tort claims.  However, because Florida has not waived immunity for tort claims in federal court, the Eleventh Amendment bars these claims.  *See Terrell v. United States*, 783 F.2d 1562, 1565 (11th Cir. 1986); *Wells*, 2021 WL 883333, at *4 (citing *Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990)).  Consequently, Counts V, VI, and VIII are dismissed for lack of subject matter jurisdiction.

*Failure to State a Claim*

The Board additionally argues that several claims should be dismissed based on Plaintiff's failure to state a claim upon which relief can be granted.  Because the Court has dismissed Counts I, II, III, V, VI, VII, and VIII for lack of subject matter jurisdiction based on Eleventh Amendment immunity, the Court does not address the Board's arguments concerning "state sovereign immunity" and failure to state a claim as to these counts.

The only remaining count at issue, therefore, is Count IV.  In Count IV, Plaintiff asserts a Title IX claim against the Board.[3]  Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . ."  20 U.S.C. § 1681(a).  It appears that Plaintiff alleges a sex discrimination claim based on an investigation and disciplinary proceedings.

At this stage of the proceedings, the Court inquires as to "whether the alleged facts, if true, permit a reasonable inference that the university discriminated against [the plaintiff] on the basis of sex."  *Doe v. Samford University*, 29 F.4th 675, 687 (11th Cir. 2022).  As an initial matter, it is not clear whether Plaintiff is proceeding under an "erroneous outcome" theory or a "selective enforcement" theory.  To state a selective enforcement claim, a plaintiff "must plausibly allege 'an inconsistency' between his treatment by the university and the university's treatment of a similarly-situated member of the other sex."  *Doe v. Rollins College*, 77 F.4th 1340, 1351 (11th Cir. 2023).  For an erroneous outcome claim, "a plaintiff must plausibly allege 'both that he was innocent and wrongly found to have committed an offense and that there is a causal connection between the flawed outcome and [sex] bias.'"  *Id.* (quoting *Samford University*, 29 F.4th at 686).  Because Plaintiff does not clearly articulate the basis of his claim(s), the Court will dismiss the complaint, with leave to amend.  In any amended complaint, Plaintiff should clearly set out which theory he proceeds under.  If he intends to proceed under both, the claims should be set out in different counts.

---

[3] Congress has abrogated state immunity from suit for actions under Title IX.  *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1301 (11th Cir. 2007) (citing *Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274, 284 (1998)); 42 U.S.C. § 2000d-7.  Accordingly, the Court has jurisdiction to consider the merits of this claim.

Plaintiff's Title IX claim is plagued with other defects.  Plaintiff generally alleges that the Board engaged in sex discrimination against him based upon the "socio-political climate," making conclusory allegations about "a history of disparate treatment of men in disciplinary actions" and "the nature of the prosecutorial behavior."  But "[p]ublic pressure is not enough on its own to support a claim of discrimination."  *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 792 (7th Cir. 2022).  Rather, a plaintiff must combine general allegations about public pressure "*with facts particular to his case* to survive a motion to dismiss."  *Doe v. Colombia Coll. Chicago*, 933 F.3d 849, 855 (7th Cir. 2019) (emphasis added).  As the Board points out, these allegations are even more conclusory and less probative of gender discrimination than those in *Doe v. Samford University*.  The allegations are therefore insufficient to support a Title IX gender discrimination claim.

To be frank, Plaintiff's amended complaint is lengthy and rambling, and it is difficult to follow along with the factual underpinnings of his case, perhaps because he incorporates the factual allegations of some counts into other counts in a confusing manner.  It is not clear to the Court what actually happened that led to the investigation and disciplinary proceedings, or even what the ultimate result of the disciplinary proceeding was.[4]

---

[4] Even after holding two hearings to address this case with the parties, it is still unclear.  For instance, as mentioned, Plaintiff alleges both that he was "permanently" removed from student housing, and that he was later permitted to obtain housing again.  He discusses adverse decision(s) and an appeal, but if he was ultimately permitted to return to student housing, it would appear that the disciplinary proceedings concluded in his favor at some point in time, although Plaintiff does not acknowledge this.

It appears that Plaintiff may be alleging that procedural irregularities in his investigation violated Title IX, but his allegations as to those alleged irregularities are rather opaque. For instance, Plaintiff lists a number of "rights" that he was entitled to during the investigation. Although he says that "nearly every right" was violated, Plaintiff then concedes that he was afforded many of these rights, including the right to receive written notice of the charge, the right to be accompanied by an advisor of his choice throughout the process, the right to not provide self-incriminating testimony, and the right to appeal. Plaintiff seems to contradict himself on several points, including whether he had the right to and did present any evidence to the disciplinary board, and whether he had the right to question witnesses in accordance with the formal hearing procedure. Ultimately, it is not clear which rights Plaintiff believes were not properly afforded to him.

Furthermore, as to some of these perceived irregularities, Plaintiff does not allege sufficient facts to show that any decisions were improper, or that they were tied to his sex in any way. For instance, Plaintiff mentions that during the disciplinary proceedings, the University of South Florida withheld video footage although it was in possession of the video at the time of the formal hearing. It appears that Plaintiff filed an appeal based on "new information" that included the video, but the decision was sustained, with Dean Danielle McDonald explaining that she found no due process violations because, among other things, the video would not have changed the outcome of the hearing. In his amended complaint, Plaintiff has not alleged or explained how the video would have affected the outcome of the matter.

In addition, Plaintiff's allegations are largely conclusory and do not support an anti-male bias as pleaded. He refers to the "personal and/or political affiliations and beliefs about social movements" of Ms. Natal-Martinez without explaining what those affiliations or beliefs are – politics and social movements are broad and could include many things, such as a pro-complainant, anti-respondent bias.[5] As such, this type of allegation of a procedural irregularity – that the Board violated Title IX by not properly considering a video at either the formal proceeding or during appeal – does not support a reasonable inference that the university discriminated against Plaintiff on the basis of sex.

Because it is possible that Plaintiff could allege facts to state a claim for relief, the Court will grant leave to amend as to any potential Title IX claims. The Court notes, however, that Plaintiff must allege sufficient *facts*, including facts about the investigation at the center of Plaintiff's own case, to sustain a claim even at the motion to dismiss stage. *See Samford University*, 29 F.4th at 687.

Litigation – particularly in federal court – is difficult, and Plaintiff should consider hiring an attorney. If he is unable to afford counsel, he should consider resources available to pro se litigants. The Tampa Bay Chapter of the Federal Bar Association operates a Legal Information Program. Through that program, *pro se* litigants may consult with a lawyer on a limited basis, free of charge. More information about the program is available on the Court's website at

---

[5] Plaintiff later refers to a review officer as an "extremely liberal, feminist, and passionate #MeToo advocate" without identifying this person or explaining what, if any, role she had in the disciplinary proceedings. These allegations are also, like Plaintiff's other allegations, largely conclusory.

http://www.flmd.uscourts.gov/legal-information-program. Additionally, librarians, lawyers, and judges from around the Middle District created a helpful guide to assist *pro se* litigants proceeding in federal court, which is located on the Court's website.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendants' Motion to Dismiss and to Strike" (Doc. 22) is hereby **GRANTED IN PART** and **DENIED IN PART**.

2. The motion is **GRANTED** to the extent that the official capacity claims against the individually-named defendants are **DISMISSED WITHOUT PREJUDICE** as duplicative. The Clerk is directed to terminate Defendants Christine Natal-Martinez, Jonathan Monti, Mitchell Jaskela, Danielle McDonald, and Melissa Graham as parties to this action.

3. The motion is **FURTHER GRANTED** to the extent that Counts I, II, III, V, VI, VII, and VIII are **DISMISSED** for lack of subject matter jurisdiction on the basis of Eleventh Amendment immunity.

4. The motion is **FURTHER GRANTED** to the extent that Count IV of the complaint is **DISMISSED WITHOUT PREJUDICE**, with leave to amend.

5. The motion is otherwise **DENIED**.

6. Plaintiff is directed to file an amended complaint on or before February 16, 2024. The amended complaint should name only the Board of Trustees as a defendant, and it should not include any of the claims that were dismissed

on the basis of Eleventh Amendment immunity. Failure to file an amended complaint as directed will result in this Order becoming a final judgment.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>29th</u> day of January, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**